J. Robert Andrews and Jeannette W. Andrews v. Commissioner.
Andrews v. Commissioner
Docket No. 66392.
United States Tax Court
T.C. Memo 1959-80; 1959 Tax Ct. Memo LEXIS 169; 18 T.C.M. (CCH) 388; T.C.M. (RIA) 59080; April 24, 1959
*169 1. Alimony payments. - Held, that a written agreement (executed after divorce), which was supplemental to a written agreement which was incorporated in the divorce decree, was incident to divorce, and that the alimony payments made in the taxable years pursuant to the supplemental agreement (which were in addition to the alimony payments made pursuant to the original agreement) come within sections 22(k) and 71 of the 1939 and 1954 Codes, respectively, and, therefore, are deductible under sections 23(u) and 215 of the 1939 and 1954 Codes. 2. Loss carry-over. - Held, for failure of proof, that petitioner is not entitled to a deduction in 1952 and 1953 for a carry-over of parts of an alleged capital loss from a sale of property in 1949. J. Robert Andrews, pro se, 6904 Strathmore Street, Chevy Chase, Md. Joseph N. Ingolia, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the taxable years 1952, 1953, and 1954, in the amounts of $1,078.46, $1,128.34, and $507.91, respectively. The questions to be decided are: (1) Whether the petitioner, J. Robert Andrews, is entitled to a deduction of $1,200 in each of the taxable years under section 23(u), 1939 Code, and section 215, 1954 Code. (2) Whether a loss alleged to have resulted from the sale in 1949 of a piece of equipment is a capital loss which is deductible in the amount of $1,250 in each of the years 1952 and 1953. Findings of Fact During the taxable years petitioners were residents of Winston-Salem, *171 North Carolina. They filed joint returns with the collector of internal revenue for the district of North Carolina. Since the issues to be decided relate to J. Robert Andrews, he is referred to hereinafter as the petitioner. Petitioner, during the years in question, was a practicing physician in Winston-Salem. In addition, he was the director of radiology at the Bowman Gray School of Medicine, Wake Forest University, North Carolina. Since March 1955, he has been employed by the National Institute of Health located at Bethesda, Maryland. Anne C. Andrews was the wife of the petitioner. She obtained a divorce from petitioner in Florida in 1950. Petitioner's former wife is referred to hereinafter as Anne. On November 14, 1950, petitioner and his then wife, Anne, entered into a written separation agreement. At that time petitioner resided in Winston-Salem, North Carolina and Anne was a resident of Palm Beach, Florida. Under this agreement, petitioner agreed, inter alia, to pay Anne for her support, during her life or until her remarriage, $150 per month, or $1,800 per year. The following is part of the agreement.. "It is hereby agreed that in the event either of the parties shall *172 obtain a divorce in any of the courts of the respective states of which either of them may be a resident, the terms of this deed of separation shall be incorporated in the decree of divorce and shall constitute a part of said decree." The separation agreement was filed on November 14, 1950, in the Superior Court of Forsyth County, North Carolina. At some time after November 14, 1950, Anne obtained a divorce from petitioner in Florida, and the agreement of November 14, 1950, was made part of the divorce decree. In 1951, petitioner remarried. On January 1, 1952, petitioner and Anne executed another agreement entitled, "Supplement to Deed of Separation," which provided, in part, as follows: "In addition to alimony payments specified in the DEED OF SEPARATION executed by J. Robert and Anne C. Andrews it is further agreed that an additional amount of $100.00 the month will be paid by J. Robert Andrews to Anne C. Andrews as alimony. * * *" Under the original and supplemental agreements, petitioner was obligated to pay Anne alimony in the amount of $250 per month, or $3,000 per year. Petitioner paid Anne $3,000 per year in 1952, 1953, and 1954. Anne reported the $3,000 in her *173 income tax returns. The supplemental agreement was not filed in the Florida court which had jurisdiction over the divorce, and the divorce decree was not modified so as to incorporate the provisions of the supplemental agreement. In his income tax returns for each of the years 1952, 1953, and 1954, petitioner took an alimony payment deduction in the amount of $3,000. Prior to 1950, petitioner practiced medicine and maintained an office in Cleveland, Ohio. Incident to closing his office in Cleveland, he sold equipment, including an x-ray machine, in 1949. The buyer purportedly paid for the x-ray machine over a period extending from the date of the sale through 1953. The petitioner used the x-ray machine in his practice of the special branch of medicine in which he is a specialist. Petitioner moved to Winston-Salem, North Carolina in January 1950. Petitioner has taken the position that a capital loss of $5,000 was sustained upon the sale of the x-ray machine. It was his understanding that he could prorate such alleged loss at the rate of $1,250 per year over the years 1950, 1951, 1952, and 1953. Petitioner deducted as a capital loss $1,250 in his returns for each of the years *174 1952 and 1953. In determining the deficiencies, the Commissioner disallowed the capital loss deductions which were taken by petitioner for 1952 and 1953; and he disallowed deductions for 1952, 1953, and 1954 for alimony payments in the amount of $1,200, which represented the additional payments of $100 per month, or $1,200 per year, under the supplemental agreement of January 1, 1952. The Commissioner determined that the additional payments were not deductible under section 23(u) of the 1939 Code, and section 215 of the 1954 Code. Opinion Issue 1: The respondent concedes that the separation agreement of November 14, 1950, was made part of the decree which brought about the divorce of petitioner from his former wife, Anne, and that the alimony payments of $150 per month, or $1,800 per year, which petitioner was required to pay under that agreement come within the provisions of section 22(k) of the 1939 Code and section 71 of the 1954 Code. Therefore, the respondent allowed deductions in the taxable years in the amount of $1,800, for each year, under section 23(u) of the 1939 Code and section 215 of the 1954 Code. The question to be decided is whether the additional payments of *175 $100 per month, or $1,200 per year, were incident to the divorce and, therefore, come within sections 22(k) and 71 of the Codes of 1939 and 1954, respectively. On the authority of , in which the respondent has acquiesced, C.B. 1954-2, p. 6, and , it is held that the additional payments of $100 per month, which were made under the supplemental agreement of January 1, 1952, were made in discharge of a legal obligation of the petitioner arising out of the marital relationship, which obligation was incurred by petitioner under a written instrument incident to the divorce, and that petitioner is entitled to deductions of $1,200 in each of the taxable years under sections 23(u) and 215, respectively, of the 1939 and 1954 Codes. The respondent erred in disallowing the deductions. See, also, , affirming . The 1952 supplemental agreement, though subsequent to the divorce, came about as a direct supplement to the 1950 agreement which, admittedly, was incident to the divorce. The supplemental agreement was also incident to the divorce. *176 Issue 2: Under this issue, it is held that for failure of proof the petitioner is not entitled to a deduction of $1,250 in each of the years 1952 and 1953 on account of an alleged capital loss of $5,000 sustained in 1949 upon the sale of an x-ray machine. Consideration has been given to petitioner's argument that deductions were taken and allowed for the years 1950 and 1951 in the amount of $1,250 for each year, and that his treatment in his returns was in accordance with recommendations given by respondent's representatives in the Greensboro office of the district director of internal revenue for North Carolina. Such assertions by the petitioner, if correct, are of no assistance to him in the present case. It may appear to petitioner that our conclusion is harsh, but, nevertheless, upon the record before us, the deductions claimed for 1952 and 1953 are not deductible. Petitioner, under his burden of proof, , is required to prove, first, the amount of the loss he sustained in 1949 when the x-ray machine was sold. In order to establish the amount of the alleged loss, he must show the original cost and the amount of the depreciated basis *177 of the equipment at the time of the sale, as well as the amount the purchaser agreed to pay. Petitioner was unable to prove all of such facts. Furthermore, assuming arguendo that there was a loss of $5,000, or some other amount, petitioner has the burden of establishing that the loss was a capital loss which he could carry over, rather than an ordinary loss. Respondent contends, inter alia, that the loss, if any, was an ordinary loss deductible in the year of the sale. Petitioner testified that the equipment was depreciable property which he had used in the conduct of his business. Section 117(a)(1)(B) of the 1939 Code excludes from the definition of a capital asset property used in a trade or business of a character which is subject to depreciation under section 23(1). The only other section which might be resorted to in support of petitioner's contention is section 117(j). But under section 117(j), either the alleged loss would be treated as an ordinary loss, since the equipment was used in petitioner's business and presumably was held for more than 6 months, or the loss would have to be offset against gains, if any, realized from the sale of like property. There is nothing in *178 the record before us relating to the gains, if any, realized in 1949 from the sales of property. Petitioner has not shown that the provisions of section 44(b), relating to installment sales, are applicable. If the provisions of section 44(b) might apply, nevertheless petitioner has failed to establish the amounts of the alleged loss which properly might be allocated to 1952 and 1953. Since the petitioner has failed to establish that he is entitled, in 1952 and 1953, to the claimed loss deductions, the respondent's disallowance of the deductions is sustained. Decision will be entered under Rule 50.